UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JONATHAN LEE VERNIER,

    Plaintiff,

v.                                Case No:  5:14-cv-236-Oc-38PRL

USA,

    Defendant.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court on United States of America's Motion for Summary Judgment (Doc. #56) filed on April 10, 2015. Plaintiff filed a Response in opposition (Doc. #58) on May 7, 2015.

### I. Background

On May 20, 2013, Plaintiff filed a *pro se* Complaint in the United States District Court for the District of Colorado, which was deficient. (Doc. #1.) Plaintiff cured the deficiencies and filed an Amended Complaint on June 19, 2013 (Doc. #10). Plaintiff was granted leave to proceed *in forma pauperis* without payment of an initial partial filing fee

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

on June 20, 2013. (Doc. #11.) On April 24, 2014, the case was transferred to the United States District Court for the Middle District of Florida. (Doc. #38.)

Plaintiff's Amended Complaint alleges one claim pursuant to the Federal Tort Claims Act (FTCA) for negligence on the part of the Bureau of Prisons. Plaintiff alleges the Defendant failed to provide for the safe keeping, care, and sustenance of his person while in its custody pursuant to 18 U.S.C. § 4042(a)(2). (Doc. #10, p. 13.) Specifically, Plaintiff alleges that on March 31, 2012, after two weeks of complaining to prison staff about a shower leak causing a wet floor in his cell, he slipped, fell, and hit his head. Plaintiff suffered an injury to the back of his head and was taken to a hospital where tests were run and Plaintiff received sutures for his head wound. Attached to Plaintiff's Amended Complaint is a statement by Mike Louchart, Plaintiff's cellmate at the time of the accident. (Doc. #10, p. 31.)

Defendant filed a motion for summary judgment (Doc. #56), asserting the security shower could not have leaked as claimed by Plaintiff and Defendant did not have actual or constructive knowledge of a leak. (*Id.*) Defendant attached an affidavit of Caiza M. Santos (Doc. #56-1), the Special Housing Unit Daily Logs for March and April 2012 (Doc. #56-2, 56-3, 56-4), and an affidavit of the Plumbing Supervisor Jonathon Day (Doc. #56-5) in support of its motion. Plaintiff filed a response in opposition with supporting exhibits (Doc. #58).

## II. Standard of Review

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Coward,* 631 F.3d 1337, 1341 (11th Cir. 2011) (internal quotations and

citations omitted).  *See also* Fed. R. Civ. P. 56(c)(2).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." *Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," *Chapman v. A1 Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.  As a *pro se* litigant, Plaintiff's pleadings are construed more liberally than those of a party represented by an attorney.  *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

If the moving party meets its burden of production, the non-moving party "must present evidence beyond the pleadings that shows a reasonable jury could find in its favor to avoid the entry of summary judgment." *Bell v. Sec'y, Fla. Dep't of Corr.*, 2012 WL 4465268 (11th Cir. 2012) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1301 (11th Cir. 2009); *see also*, *Beard v. Banks*, 548 U.S. 521, 529 (2006) (citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986), must be drawn in favor of the non-moving party, but those inferences are drawn "only to the extent supportable by the record." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (citation omitted).  The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, [the court's] inferences must accord deference to the views of prison

authorities." *Beard*, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Conclusory allegations based on subjective beliefs are not sufficient to create a genuine issue of material fact. *Leigh*, 212 F.3d at 1217. Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" *Pittman v. Tucker*, 213 F. App'x 867, 870 (11th Cir. 2007) (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)). In summary, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Scott*, 550 U.S. at 380.

### III. Facts

In his Amended Complaint, Plaintiff alleges on March 13, 2012, while incarcerated at United States Penitentiary Coleman I (USP Coleman I), Plaintiff was moved to cell #B-213 in the Special Housing Unit (SHU). (Doc. #10, p. 4.) Upon moving into that cell, Plaintiff notified an officer that there was a problem with the plumbing because there was water on the floor. (*Id.* at 5.) The officer told Plaintiff he would submit a work order. (*Id.*)

On March 21, 2012, Plaintiff submitted an Informal Resolution complaining about a "leaky shower." (*Id.* at 6; Doc. #10-1.) Plaintiff asserts the water was leaking from underneath the shower stall and pooled on the cell floor and then drained into the hallway where the floor drain was located. (*Id.* at 6-7.) On March 23, 2012, Plaintiff complained to Warden Jarvis and A.W. Lee, about the plumbing problem during their weekly visit to the SHU. (*Id.* at 7.) On March 31, 2012, between 12:00 a.m. and 1:00 a.m., Plaintiff fell in his cell and hit his head. (*Id.*) Plaintiff was taken to Leesburg Regional Medical Center where he was examined and received sutures to close a wound on the back of his head. (*Id.* at 32.) No other injuries were reported at the time. (*Id.*)

## IV.  Analysis

"It is well settled that sovereign immunity bars suits against the United States except to the extent that it consents to be sued." *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir.1999). The FTCA provides a "limited waiver" of this sovereign immunity, "making the United States liable for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *JBP Acquisitions, L.P. v. United States ex re. FDIC*, 224 F.3d 1260, 1263 (11th Cir. 2000) (quoting 28 U.S.C. § 1346(b)(1)). FTCA liability attaches "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In other words, "[t]he FTCA was designed to provide redress for ordinary torts recognized by state law." *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) (internal quotation marks and citations omitted). In analyzing an FTCA claim, the court applies the law of the state

where the alleged tort occurred. *Lambert v. United States*, 198 F. App'x 835, 838 (11th Cir. 2006) (citing *Stone v. United States*, 373 F.2d 1129, 1130 (11th Cir. 2004)).

" 'To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages.' " *Id.* (citing *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001)).  The duty of care owed by the Bureau of Prisons to federal prisoners is set forth in 18 U.S.C.A. § 4042, and requires the exercise of ordinary diligence to keep prisoners safe and free from harm.  *United States v. Muniz*, 374 U.S. 150 (1963); Jones *v. United States*, 534 F.2d 53, 54 (5th Cir. 1976).[2] To prove a breach of duty, "a plaintiff must show the injury to have been a reasonably foreseeable consequence of the custodian's negligence." *Dep't of Health and Rehab. Services v. Whaley*, 574 So. 2d 100, 103-104 (Fla. 1991).  The issue of foreseeability is associated with the issue of proximate cause, which "is also bound up with the nature of the duty that the actor owes to others." *Cowart v. United States*, 617 F.2d 112, 115 (5th Cir. 1980).

It is clear from the record that Plaintiff suffered a head injury as a result of a fall in his cell in the early morning hours of March 31, 2012.  Plaintiff alleges the fall was due to a leaking shower which caused water to pool on the floor of his cell.  Defendant seeks summary judgment on Plaintiff's FTCA claim asserting the security shower could not have leaked as claimed by Plaintiff.  (Doc. #56.)

In support of the Motion for Summary Judgment, Defendant attached an affidavit of the Plumbing Supervisor Jonathon Day (Day).  (Doc. #56-6.)  Day states that he is

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

knowledgeable about and familiar with the plumbing systems in the SHU and specifically Plaintiff's cell. (*Id.* ¶ 2.) Day is responsible for all plumbing repairs and matters at USP Coleman 1, including the SHU. (*Id.* ¶ 3.) Day states that the shower in Plaintiff's cell is specifically designed to minimize destruction by inmates and prevent leakage and flooding. (*Id.* ¶ 5.) Day explains the design of the shower prevents leaks because the "water source is contained outside the cell until the actuator button is pressed and pressurized water is allowed to come through the shower head for approximately two minutes. Any running water is collected and captured by the drain located in the center of the base of the shower." (*Id.* ¶ 10.) Day further attests that it is impossible for the security shower to leak as described by Plaintiff. (*Id.* ¶ 11.) According to Day, "in order for water to pool to the extent it would drain into the hallway would require tampering with the structure, and a level of water in the cell that would be at a minimum of ¼ in deep throughout the entire cell." (*Id.*) In his experience at USP Coleman 1, Day has "never seen a security shower leak as inmate Vernier claims." (*Id.* ¶ 12.)

Defendant also attached the Special Housing Unit Daily Logs (Logs) for March and April 2012 (Doc. #56-2, #56-3, #56-4), and an affidavit of Caiza M. Santos (Santos) (Doc. #56-1) authenticating the Logs. In his affidavit, Santos describes the purpose and use of the Logs. Specifically, Santos states: "Page two (2) of the SHU log includes significant log entries including: staff entering, inmate entering or exiting the unit, inmates leaving SHU to the general population, the total count of inmates referred to as the base count, significant events, security rounds, security counts, and inspections." (Doc. #56-1, ¶ 9.) Defendant asserts that the Logs would have reflected any repairs needed and/or done to

Plaintiff's cell during March and April 2012.  (Doc. #56, ¶ 15.)  Defendants argue the lack of a work order shows the absence of a leak in Plaintiff's cell.  (*Id.* at p. 13.)

Plaintiff opposes Defendant's motion asserting Day's affidavit contains inconsistencies.  (Doc. #58.)  The Court finds no inconsistencies in Day's affidavit.  Likewise, Plaintiff claims the Logs are irrelevant because they do not reflect when there is a maintenance problem.  Upon review of the Logs, there are entries in the record that reflect certain repairs that were made to other cells in the SHU.  For example: on April 25, 2012, the Logs show a broken sprinkler head in A-113 which facilities repaired that same day (Doc. #56-5, p. 53); and April 2, 2012, plumbing entered to work on cell A-13 (Doc. 56-4, p. 12).  Absent from the Logs however, are any repairs made to Plaintiff's cell B-213.  Plaintiff also alleges that he complained to Warden Jarvis and A.W. Lee, about the plumbing problem during their visit to the SHU on both March 16, 2012 and March 23, 2012.  (Doc. #35, at 6-7.)  However, the Logs do not indicate Warden Jarvis and/or A.W. Lee were present in the SHU on that date.  (*See* Doc. 56-3, pp. 40-45; *But see* Doc. 56-4, p. 78.)  The Logs do however show Plaintiff went to hospital for head injury on March 31, 2012.  (Doc. #56-3, p. 89.)

Plaintiff submitted an Informal Resolution Form dated March 22, 2012, that states "the shower in [his] cell leaks."  (Doc. #10, p. 28.)  Notably, Plaintiff does not state that water is pooling on his cell floor or that the shower leak creates an unsafe condition in his cell.  Although the Logs do not reflect a repair was made to Plaintiff's cell, while exhausting his administrative remedies, the Regional Administrative Remedy Appeal No: 686-192-R1 denied Plaintiff's appeal and found "the leak in [Plaintiff's] cell was repaired shortly after facilities was made aware of the issue."  (Doc. #10, p. 36.)

Similarly, Plaintiff attaches an email correspondence between Associate Warden Larri Lee (Lee) and Health Systems Specialist Carla Haynes (Haynes) which seeks assurance "that the leak in Vernier's cell has been repaired." The email correspondence goes on to state that there is no record of the date of repair but, according to a COA facilities staff member, sometimes facilities will make a minor repair without entering it in the TMS system. (Doc. #58, p. 13.) Lee responds that a search of TMS was conducted and no work orders were found for cell B-213 and as of October, 17, 2012, no leaks or repairs are needed in cell B-213. (*Id.*)

Mike Louchart (Louchart), Plaintiff's cellmate at the time of the incident, provided an affidavit which states in relevant part: "when the officers finally did respond and turned the light on, there was a lot of blood on the floor and also a lot of water on the cell floor." (Doc. #10, p. 31.) "We complained several times about the leaks in several of the cells that comes from various places like the back of the showers where the pipes are and from the toilets and sinks." (*Id.*) However, Louchart does not say how the water got on the floor and that it was there before Plaintiff fell, or that he saw Plaintiff slip on the water when he fell. Likewise, Louchart states that there were complaints made about "leaks in several of the cells" but he does not state that he made a complaint about a leak in cell B-213.

The record shows 1) the shower was leaking and 2) Plaintiff fell and sustained a head injury. That is insufficient to establish that the Defendant breached its duty of care. There is no evidence that water accumulated on the cell floor to the extent alleged by Plaintiff. Even assuming water had pooled on the cell floor, there is no evidence of how it got there, how long it was there, and that it *caused* Plaintiff to fall. Plaintiff's work order

alleges there is a shower leak but it does not say where the shower was leaking from or that water was accumulating on the floor as a result of the shower leak.  Plaintiff's reporting an alleged leak in his shower does not show that the leak actually existed or that it was caused by Defendant's failure to maintain the premises in a reasonably safe condition.  To the contrary, the evidence shows that it is impossible for the shower leak to the extent described by Plaintiff.  After drawing all reasonable inferences in favor of Plaintiff, the Court grants summary judgment in favor of Defendant.

Accordingly, it is now

**ORDERED:**

United States of America's Motion for Summary Judgment (Doc. #56) is **GRANTED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 28th day of January, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

FTMP-2
Copies: All Parties of Record